Caruthers, J.,
delivered the opinion of the Court.
This bill for divorce is based upon two grounds: 1, wilful and malicious desertion for two years; and 2, cruel and inhuman treatment. The Court below considered the case well made out, and decreed a divorce from the bonds of matrimony, from which the defendant appealed; and refused alimony, for which the complainant brings up the case by writ of error.
First. Is the decree maintainable upon the ground of desertion and absence for two years. Since the case of Stewart vs. Stewart, 2 Swan, 591, it is not so easy *556 to make out a case under this clause of the act of 1835, as it had been under the loose construction which had before prevailed. This, like any other ground for divorce, must be well averred as well as proved. The averment here is well made. But does the proof bring the case up to the requirements of the statute, as construed in the case cited. We think it clearly does not. The desertion must have been without good cause, and malicious. The language of the act is, “ wilful and malicious desertion or absence, without reasonable cause, for the space of two years.” Now, if the party goes or remains away, for “ reasonable cause,” or even without good and sufficient cause, but not of malice, the divorce cannot be obtained. So it must appear from the evidence in the case, to sustain the decree on that ground, that the defendant had no reasonable cause to leave, or remain away from his wife, and that he was actuated by malice to her in doing so. It cannot be contended that in view of this explanation of the law, as settled in the case in Swan, that the facts proved bring the case up to the law on this point. In fact, his departure, and continued absence, was almost forced upon him, and was evidently against his wishes and feelings. They were both, unfortunately, passionate and irritable, and were guilty of mutual faults in their treatment of each other. They magnified small things into consequence on both sides, under the influence of passion, until their feelings became alienated, and she gave him every indication that his absence would not be disagreeable to her, but was most manifestly the course she desired him to take. Having been a widow when they were married, and in the possession of property derived from her first hus *557 band, among ■which was a comfortable residence upon her dowry, they continued to reside there, where she yet remains. It was from her house he departed upon the separation, and he left her in the possession and enjoyment of what property they had. He was all the time engaged in the clerk’s office of Blountville, a few miles off, and was then, and before, and is still engaged in the discharge of his duties as County Court Clerk. He has, ever since the separation!, contributed out of his income, perhaps most of it, to the support of the family, and the education and dressing of his children, of whom he seems to be very fond and affectionate. The proof is ample, that he did all he could or ought in this way. She had several children by her first marriage who lived with them, and of course took sides with her in their difficulties, and as is usual in such cases, may have naturally, though unwisely, contributed to the unfortunate state of things which has resulted in the bitter controversy, and public, exposure of both parties, and the great injury of their children, consisting of three daughters of tender years. Upon the whole, we are satisfied from the facts, that the desertion and absence of the defendant, were not without cause on her part, nor was it of malice, as required by the statute. So the decree cannot be maintained on this ground.
Second. But the ground mainly relied upon, is for personal indignities, “cruel and inhuman treatment,” and, “that he has abandoned her.” This is under the 19th section of the divorce act of 1835, which for such causes, allowed a decree of separation from bed and board, but by the act of 1842, might extend to divorce *558 from the bonds of matrimony, at the discretion of the Court. The 20th sec. of the act of 1835, permits the defendant to such a bill, “ to prove the ill conduct of the complainant as a justifiable cause for the conduct on his part complained of.”
We have taken occasion often to say heretofore, in written and verbal opinions, that these liberal acts have been very much abused by the latitudinous construction given to them by the Courts. Shell vs. Shell, 2 Sneed, 716. And under a high sense of - duty, for the protection of this, the most important and sacred of the domestic relations in civilized society, we have endeavored to confine within proper limits, the action of the Courts, under these statutes, so as to save families and society from the direful consequences of indiscriminate dissolution of the bonds of matrimony. But whatever we may think of the policy of the act of 1842, by which the door is opened so widely to divorces, yet we must, as a Court, give full and fair effect to its provisions. This we have, and will endeavor to do, but cannot go beyond them. It would seem that the idea has somehow taken possession of the popular, and even professional mind, in practice, that the temporary or qualified divorce, from bed and board, is abolished, and that in every case that may be brought under the 19th section, there must be a dissolution of the bonds since the act of 1842. This is not so. The extension act of 1842, was only intended to meet cases of great aggravation, and to leave the remedy as it was in all other cases, falling under the provisions of the old act.
Then, unless the case is one of great aggravation, the relief was not intended to go beyond a separation *559 from bed and board, either indefinitely, or for a limited term. In a large majority of these cases, the suspension of their matrimonial relations would be soon removed by mutual consent, 'and harmony restored, when it is known that they cannot be put in a situation to ■ form other connections of the kind, more consonant perhaps, to their tastes. “ Eor better or for worse,” is the contract first made, and it should be enforced, unless a clear case is made out under the law to annul it. Th'e facility' with which divorces can be obtained, has produced more than half the disgraceful and ruinous family broils, which has disturbed the peace of the parties and their connections, and blasted the prospects of children. With these views and convictions on the subject, we would be derelict in duty to sanction the loose administration of the law of divorces, which has obtained in some of the Courts.
In the case before us, there were some instances of personal indignity under circumstances of excitement, for which he was very censurable, but she was not entirely faultless. Two out of the three instances of that kind, arising out of the irritation of the moment, she seems, very properly, or generously, to have overlooked and forgiven, herself; but as to the last, which happened in March, 1848, before their final separation, the next fall, she insists there has been no condonation. It is true, they lived in the same house after that occurrence, as before, but not as man and wife. This seems to have happened late one night, in a contest for the possession of their youngest child, as they were occupying separate rooms. The child was with him, but in consequence of its crying very much, she asked the custody of it, and *560 on Ms ungracious refusal, attempted to take it by force, and in the scuffle her finger, somehow, got into his mouth, and he hit it through the skin, whereupon, one or two of her sons came in, and the contest was soon ended, and one of his legs was broken in the affray, but most probably by accident. So he was the greatest sufferer, but was to blame for entering into this contest with his wife, about the child. He had previously acted badly, in evincing some slight symptoms of jealousy of her, without sufficient grounds. She -had also treated him amiss in charging him, as it appears, without grounds, with squandering her property, as administrator of her first husband, and mismanaging the estate. The proof shows that he had injured himself seriously, in his endeavors to liquidate the .debts, and protect the property of the estate. Under these circumstances he was much irritated by these imputations. But all this does not justify him in his conduct, but can only operate in mitigation, and preclude her from that full redress to which she might be otherwise entitled.
They were both highly respectable, and prove good characters, but with the abatement that they were high tempered and excitable.
Upon the whole, we do not think a proper case for a divorce from the bonds of matrimony, is made out, but that it is a case for a divorce from bed and board; and this will be granted to her for an indefinite period. It is also a proper case for alimony. But as to the amount he should pay, we are not satisfied. It appears that he is without property, but has a profitable office, the clerkship of the County Court of Sullivan.
*561 The case 'will he remanded to the Circuit Court of Sullivan, and the Judge of that Court will, upon proper inquiry into his means, and the amount of his income, allow her such sum as he may consider right, out of the same, to he disbursed as he may direct, for her support and that of her children, to he paid at such times as he may order. But whenever the Court is satisfied, that the defendant is willing" and proposes in good faith, to live with her again and perform the duties of husband, and that it would he right and proper for her, under all the circumstances, to live with him again, the payment of alimony shall cease, although she may refuse to accede to his propositions for a reunion.
Let a decree he entered in conformity to this opinion.